**Frank Wall, OSB #733160**
fWall@ipns.com
4411 N.E. Tillamook Ave.
Portland, OR  97213
Telephone: (503) 223-6066
Facsimile:  (503) 223-0903

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | | |
|---|---|---|
| LORONDA HEIN, | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| BLF HOLDINGS MHC LLC  D/B/A | ) | |
| TOWNFAIR APARTMENTS and | ) | |
| SAGE APARTMENT | ) | |
| COMMUNITIES INC., | ) | |
| _____ | ) | |

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff LoRonda Hein ["Plaintiff"] is a resident of Multnomah County, Oregon and a former resident of Townfair Apartments ["Townfair"] in Gresham, Oregon

2.  Defendant Blf Holdings Mhc LLC, Townfair's owner, is a California corporation incorporated in Orange County, California.

3.  Defendant Sage Apartment Communities Inc., Townfair's manager, is a Nevada corporation headquartered in Orange County, California.

4.  Defendant Blf Holdings Mhc and Defendant Sage Apartment Communities Inc. ["Defendants"] are Plaintiff's landlords pursuant to O.R.S. § 90.100 (23).

5.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3601 et seq. of the Fair Housing Act of 1968.  Jurisdiction and venue are proper in this Court for this action.

## STATEMENT OF FACTS

6.  This is an action for Defendants' failure to provide reasonable accommodations for disability in response to Plaintiff's written request for such accommodation.

7.  On or about July 1, 2019, Plaintiff completed an on-line application to rent Apartment 243, a two-bedroom for $1684/mo. in Townfair, disclosing, *inter alia,* that her income included Social Security disability payments, she had a state-funded disability caretaker who would also occupy the apartment, and she required a disabled parking spot very close to the rental unit.

8.  On or about July 2, 2019, Plaintiff called Townfair employee Stephanie, who reassured Plaintiff that Townfair had a disabled parking space immediately adjacent to the apartment.

9.  However, when Plaintiff moved in on July 12, 2019, she discovered that no such disabled parking space existed and that she would have to walk a considerable distance to the one disabled parking space Townfair provided for the entire complex.

10.  On the above date Plaintiff also realized that Apartment 243, which she reasonably assumed was located on the second floor, was in fact on the third floor.

11.  Plaintiff's disability, a cluster of symptoms arising out of diabetes, obesity and severe anxiety, resulted in ambulatory challenges for which, six months prior to moving into Townfair in February of 2019. Plaintiff had undergone surgery to her Achilles tendon to strengthen it.

12.  Plaintiff erroneously believed that her leg was now strong enough to handle walking up three flights of stairs as well as walking the unexpected distance from her disabled parking spot.

13.  However, shortly after moving in, Plaintiff began to suffer pain from the above exertions, which only intensified in the following months, necessitating accommodation.

14.  On October 9, 2019, Plaintiff handed Townfair office employee Jessica a written request for accommodation stating that Plaintiff's pain had become unbearable and requesting to be moved to a lower-level apartment.  (Exhibit "A")

15.  Although Jessica told Plaintiff she would have to discuss the request with her supervisor Stephanie, Plaintiff heard nothing from the office until she called in early November, stating her housemate had his rent in full but that she was short her share of November's rent because pain prevented her from working; consequently she needed to move to a first floor apartment immediately.

16.  At that time Jessica told Plaintiff about a remodeled one-bedroom apartment available for $1199 plus a $500 transfer fee, which Plaintiff agreed to accept.

17.  But in a follow-up phone conversation with Stephanie, Stephanie said the apartment was in fact $1299 plus a $100 late fee on full November's back rent for Plaintiff's current apartment, a $500 transfer fee, $1299 first month's rent on the new unit and a new $1299 security deposit due prior to return of Plaintiff's security deposit for her current apartment, for a total of nearly five thousand dollars, more than Plaintiff could pay.

18.  Plaintiff offered to make payments, which Stephanie refused to accommodate.

19.  When Plaintiff questioned why a $500 non-refundable "transfer fee" was tacked on to the already substantial total when Townfair was not transferring any fees from the old to the

new apartment as Plaintiff had requested, Stephanie refused to consider any such fee modification and told Plaintiff "that's just the way we do things here."

20.  On December 12, 2019, Plaintiff submitted one additional request for disability accommodation signed by her doctor.

21.  Defendants ignored said request and brought an eviction action instead.

22.  In February 2020, as a consequence of having put pressure on the extant injury by climbing stairs, Plaintiff had to undergo a second surgery on her leg.


**CLAIMS FOR RELIEF**

**First Claim:  Violations of The Fair Housing Act (42 U.S.C. § 3604)**

23.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 22 above.

24.   The Fair Housing Act makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... that buyer or renter ....,," prohibiting "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap... " 42 U.S.C. § 3604(f)(1) & (2).

25.  Specifically, the Act identifies as discriminatory

a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling...

42 U.S.C. § 3604(f)(3)(B).

26. Plaintiff is a qualified individual with a disability, because physical and mental disabilities substantially limit her ability to conduct major life activities such as walking and working. 42 U.S.C. § 12102.

27. The Fair Housing Act applies to Defendants because Defendants provide and manage rental housing. 42 U.S.C. § 3603(a)(2).

28. Defendants discriminated against Plaintiff because of her disability by failing to make reasonable accommodations to their policies, practices, or procedures that were necessary for Plaintiff enjoy the benefits of her dwelling.

29. Specifically, Defendants were aware of Plaintiff's attenuated physical and consequently economic condition yet failed to enter into a good faith negotiation to allow Plaintiff to relocate to a first floor apartment to accommodate her handicap as well as to prevent future medical complications arising from such failure.

30. Defendants also failed to provide and/or remediate the inadequate proximity of Plaintiff's disabled parking space, additionally subjecting Plaintiff to such future complications through failure to accommodate Plaintiff's disability.

31. Defendants' conduct was willful, intentional, and in reckless disregard of Plaintiff's civil rights.

32. As a direct and proximate result of Defendants' discrimination Plaintiff, an aggrieved person within the meaning of the Act (42 U.S.C. § 3602(i)(1)) suffered damages due to Defendants' failure to provide her with reasonable accommodation.

33. Plaintiff is therefore entitled to actual damages to be proven at trial, punitive damages, injunctive relief, costs, and reasonable attorney's fees. 42 U.S.C. § 3613(a)(1)(A); 42 U.S. Code § 3613(c)(2); ORS § 90.255 – § 90.390.

**Second Claim: Retaliatory Eviction (ORS § 90.385)**

34.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 33 above.

35.   Plaintiff requested a reasonable accommodation on October 9, 2019 (Exhibit "A") that Defendants failed to grant in any respect; nor did Defendants grant any subsequent requests for such accommodation in any respect. (Exhibit "B," Exhibit "C.")

36.   Moreover, subsequent to said initial request for accommodation, Defendants began to decrease essential services to Plaintiff, such as failing to notify Plaintiff when her critical medications, e.g., insulin, arrived in Townfair's administrative offices.

37.   Finally, Defendants commenced an action for eviction after Plaintiff complained of Defendants' failure to reasonably accommodate her disability as required by law.

38.   The Oregon Residential Landlord Tenant Act prohibits retaliation by

decreasing services, [and/or] by serving a notice to terminate the tenancy... after...the tenant has made any complaint to the landlord that is in good faith and related to the tenancy...[and/or] the tenant has performed or expressed intent to perform any other act for the purpose of asserting, protecting or invoking the protection of any right secured to tenants under any federal, state or local law.

ORS § 90.385(1)(a), (1)(b) & 1(f)

39.   As a direct and proximate result of Defendants' retaliation Plaintiff suffered damages and is therefore entitled to two months' periodic rent or twice the actual damages to be proven at trial, whichever is greater, together with reasonable attorneys fees.   ORS § 90.385; ORS § 90.375; ORS  § 90.255

**Third Claim: Constructive Eviction (ORS § 90.375)**

40.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

41.   As Defendants knew, Plaintiff's disability necessitated a first floor apartment and parking space within close proximity to such apartment in order for Plaintiff to accomplish such essential life tasks s walking and working without risk of further disability.

42.   Additionally, as Defendants were aware, Plaintiff received essential, time-sensitive medications in the administrative office and relied on Defendants' timely notification of such receipt, which they failed to provide.

`    43.   The Oregon Residential Landlord Tenant Act prohibits a landlord from "unlawful..remov[al] or willfully diminish[ment] [of] services to the tenant by interrupting or causing the interruption of...essential service[s] ".  ORS § 90.375; ["essential services" pursuant to ORS § 90.100(13)(a)(B)]

44.   Defendants' willful failure to accommodate Plaintiff and/or to negotiate in good faith to find a way of accommodate Plaintiff combined with Defendants' willful diminishment of essential services constituted constructive eviction, or ouster within the meaning of the Act.

45.   As a direct and proximate cause of Defendants' unlawful ouster Plaintiff suffered damages and is therefore entitled to two months' periodic rent or twice the actual damages to be proven at trial, whichever is greater, together with reasonable attorneys fees.  ORS § 90.375; ORS  § 90.255

**Fourth Claim:  Unlawful Trade Practices [UTPA] (O.R.S. §  646.607 et seq.)**

46.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 45 above.

47.  Before Plaintiff took occupancy Townfair assured Plaintiff that Townfair would provide Plaintiff with a disabled parking space "right next to your apartment;" moreover that Townfair had several such disabled spaces to choose from.

48.  As Plaintiff had recently undergone surgery and knew she had trouble walking without pain, Plaintiff relied to her detriment on the above representation.

49.  However, to induce Plaintiff to rent, Townfair misrepresented the facts of the matter: in fact, there was no close-by parking space, nor was there anything more than one single disabled parking space for the entire complex of 265 apartments, approximately 500 residents.

50.  Said misrepresentation is a prohibited trade practice under UTPA, which states that a person engages in an unlawful trade practice if he or she

> represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have[;] promises to deliver real estate, goods or services within a certain period of time with intent not to deliver the real estate, goods or services as promised [or] engages in any other unfair or deceptive conduct in trade or commerce.

ORS § 646.608(1)(e), (q) and (u).

51.  Additionally, Defendants' failure to accommodate Plaintiff or even so much as attempt to do so by negotiating, compromising and/or adjusting their apartment transfer policies as well as providing the promised disabled parking are also prohibited under UTPA.

52.  As a direct and proximate cause of Defendants' unlawful trade practices Plaintiff suffered damages and is therefore entitled to actual damages to be proven at trial, punitive damages and attorney's fees. ORS §  646.638(1) and (3).

### Fifth Claim: Intentional Infliction of Emotional Distress

53.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 52 above.

54.  Defendants knew, because Plaintiff informed them of such facts prior to taking occupancy, of Plaintiff's disability and attendant symptoms, which included severe anxiety with consequent panic attacks for which Plaintiff necessitated medication.

55.  Yet Defendants not only refused to accommodate Plaintiff, they willfully failed to provide essential services they had earlier consistently provided and intentionally ignored Plaintiff's requests for accommodation, even going so far as, *after* they had obtained an eviction settlement and Plaintiff was required to move out, to then and only then respond formally to such requests for accommodation.  (Exhibit "D")

56.  Because Plaintiff could barely walk or work, suffered intensifying pain eventually necessitating a new surgery and endured worsening panic attacks as a result of extreme emotional distress inflicted by Townfair's discriminatory unlawful management; by constructive eviction culminating in Plaintiff's fear of and actual loss of her home, Defendants' conduct was extreme and outrageous.

57.  As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered economic damages in the approximate amount of $20,000.00  or other amount to be proven at trial.

58.  As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered non-economic damages in the approximate amount of $100,000.00, or other amount to be proven at trial.

**Sixth Claim: Alternatively, Negligent Infliction of Emotional Distress**

59.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 52 above and pleads this claim in the alternative to paragraphs 53-58.

60.  Defendants knew or should have known because Plaintiff informed them of such facts prior to taking occupancy of Plaintiff's disability and attendant symptoms, which included severe anxiety with consequent panic attacks for which Plaintiff necessitated medication.

61.  Plaintiff had a legally protected interest in Defendant's provision of essential services as well as in Defendants' provision of reasonable accommodation for a disability in rental housing.

62. Yet Defendants negligently failed to provide Plaintiff with said legally protected interest, both in the essential services they had earlier consistently provided and in recklessly ignoring Plaintiff's requests for accommodation; even going so far as, *after* they had obtained an eviction settlement and Plaintiff was required to move out, to then and only then respond formally to such requests for accommodation.  (Exhibit "D")

63.  Because Plaintiff could barely walk or work, suffered intensifying pain eventually necessitating a new surgery and endured worsening panic attacks as a result of extreme emotional distress inflicted by Townfair's discriminatory unlawful management; by constructive and actual eviction culminating in Plaintiff's fear of and actual loss of her home, Defendants' conduct was reckless in the extreme.

64.  As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiff has suffered economic damages in the approximate amount of $20,000.00  or other amount to be proven at trial.

65. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiff has suffered non-economic damages in the approximate amount of $100,000.00, or other amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally liable as follows:

1. For general non-economic damages according to proof at trial;

2. For economic damages according to proof;

3. For prejudgment interest according to proof;

4. For damages for Plaintiff' other economic and non-economic losses, if any, according to proof;

5. For costs of litigation and trial according to proof;

6. For attorneys fees according to proof; and

7. For such other and further relief as the Court may deem just and proper.

DATED: June 11, 2020

FRANK WALL, OSB #733160
Attorney for Plaintiff
4411 N.E. Tillamook
Portland, OR 97213
503-223-6066
fWall@ipns.com